## S04A0413. DEMONS v. THE STATE.
(595 SE2d 76)

CARLEY, Justice.

Eddie Demons was tried before a jury and found guilty of felony murder, aggravated assault, and two counts of possession of a weapon during the commission of a felony. The trial court merged one weapons possession count into the other, merged the aggravated assault into the felony murder, and entered judgments of conviction on the remaining counts. The Court imposed consecutive sentences of life imprisonment and a term of five years. The trial court denied a motion for new trial, and Demons appeals.[1]

---

[1] The crimes occurred on November 16, 2001, and the grand jury returned its indictment on April 17, 2002. The jury found Demons guilty on January 23, 2003, and the trial court entered the judgments of conviction and sentences on January 31, 2003. Demons filed a motion for new trial on February 6, 2003 and amended it on May 20, 2003. The trial court denied that motion on July 31, 2003, and Demons filed a notice of appeal on August 29, 2003. The case was docketed in this Court on November 12, 2003 and submitted for decision on January 5, 2004.

1. Construed in support of the verdicts, the evidence shows that Demons and the victim had been in a homosexual relationship for many years and shared a house. Demons began to threaten and beat the victim, who was in fear for his life. On the afternoon of the crimes, Demons called 911 and informed the dispatcher that he had just killed the victim and shot himself in the head. This admission was corroborated by the physical evidence. Police officers found Demons lying on the front steps of the house with a head wound. He informed them that the gun was in the house. The victim had three gunshot wounds and was discovered in his SUV in the driveway. The house was extremely neat except for the master bedroom, which contained blood all over and brain matter on the ceiling, and blood on a telephone and a revolver which fired the bullets recovered from the victim's body. The evidence, which was both direct and circumstantial, authorized the jury to find Demons guilty of felony murder and possession of a weapon during the commission of a felony beyond a reasonable doubt and to the exclusion of every reasonable hypothesis save that of guilt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *White v. State*, 276 Ga. 583, 588 (2) (581 SE2d 18) (2003); *Kirkland v. State*, 271 Ga. 217, 218 (1) (518 SE2d 687) (1999).

2. Demons contends that the trial court erroneously failed to instruct the jury on voluntary manslaughter.

" '(A) defendant is not entitled to a voluntary manslaughter charge where he has not demonstrated that he acted solely out of passion in response to a provocation that would have caused a reasonable person to act as he did.' [Cit.]" *Savage v. State*, 274 Ga. 692, 694 (2) (558 SE2d 701) (2002). The evidence adduced by the State does not suggest any provocation sufficient to reduce the killing to manslaughter, and Demons presented no evidence whatever. *Armstrong v. State*, 264 Ga. 505, 506 (3) (448 SE2d 361) (1994). There is not any evidence that the condition of the master bedroom was caused by a struggle involving the victim, rather than Demons' shooting himself and trying to leave the room. Even if there was such a struggle, "fighting prior to a homicide 'does not constitute the type of provocation that would warrant a charge of voluntary manslaughter.' [Cit.]" *Nichols v. State*, 275 Ga. 246-247 (2) (563 SE2d 121) (2002). Furthermore, the record does not include any evidence that the victim ever possessed or fired the gun. Moreover, such evidence, without more, would not support an instruction on voluntary manslaughter. *Worthem v. State*, 270 Ga. 469, 471 (2) (509 SE2d 922) (1999).

Testimony regarding discord in the relationship between Demons and the victim does not constitute evidence of provocation or passion. *Duquette v. State*, 265 Ga. 152, 153 (2) (454 SE2d 500) (1995). Demons' own statement does not contain any hint that he

acted out of a sudden, violent, and irresistible passion. See *Savage v. State*, supra at 694 (2); *Hightower v. State*, 259 Ga. 770, 771 (1), 773 (15) (386 SE2d 509) (1989). The circumstances cited by Demons do not show provocation and passion. At most, they show a lack of intent to kill the victim. The jury acquitted Demons of malice murder and convicted him of felony murder. "In the absence of evidence of provocation and passion, the trial court properly refused to instruct the jury on the offense of voluntary manslaughter. [Cit.]" *Savage v. State*, supra at 694 (2).

Relying on *Tarvestad v. State*, 261 Ga. 605 (409 SE2d 513) (1991), Demons also asserts that the trial court should have instructed the jury on voluntary manslaughter as his sole defense to murder. "Where there is no evidence to support the charge, however, a charge is not required even if it is the sole defense. [Cit.]" *Bowen v. State*, 272 Ga. 89 (2) (526 SE2d 546) (2000). See also *Burgess v. State*, 276 Ga. 185, 188 (6) (576 SE2d 863) (2003). More importantly, "[v]oluntary manslaughter is not a defense to murder, but it may be a lesser included offense of that crime. [Cit.]" *Sparks v. State*, 277 Ga. 72, 73 (2) (586 SE2d 645) (2003). See also *Jones v. State*, 272 Ga. 884, 887 (4) (536 SE2d 511) (2000).

3. Demons further contends that the trial court erred in failing to charge the jury on mutual combat. Such a charge was not warranted, as there was no evidence that Demons and the victim "were both armed with deadly weapons and mutually intended or agreed to fight. [Cits.]" *Moses v. State*, 270 Ga. 127, 130 (6) (508 SE2d 661) (1998).

4. The victim's co-worker, Jackie Bohr, testified that, two days before the murder, the victim was distressed and had bruises on his upper arms and chest, that he began crying and told her where the bruises came from, that she had never seen anybody so afraid of anyone else, and that he said that Demons was going to kill him. Demons enumerates the trial court's admission of this testimony under the necessity exception to the hearsay rule.

Much of Ms. Bohr's testimony was based on her observation of the victim. To the extent that she testified to the victim's statements, however, they must come within an exception to the hearsay rule. To satisfy the necessity exception, " 'the proponent must show a necessity for the evidence and a circumstantial guaranty of the statement's trustworthiness.' [Cits.]" *McPherson v. State*, 274 Ga. 444, 450 (10) (553 SE2d 569) (2001). The first requirement is fulfilled because the declarant is deceased, and the statements were relevant, and more probative than other evidence, in showing Demons' intent and state of mind and the victim's fear for his personal safety. *Ward v. State*, 271 Ga. 648, 650 (2) (520 SE2d 205) (1999).

With respect to the second requirement, Demons argues that Ms.

Bohr was merely a co-worker and not a close friend of the victim's, that the testimony was not corroborated, and that the victim had a motive to lie in order to justify his homosexual conduct with another man. However, Ms. Bohr's testimony shows that she worked daily with the victim for over a year and became a close friend in whom he would confide intimate and very personal details about his relationship with Demons. *McPherson v. State*, supra at 450 (10); *Ward v. State*, supra at 651 (2). Corroboration is not a required indicia of reliability, and is not even necessarily an appropriate consideration in applying the necessity exception. *Yancey v. State*, 275 Ga. 550, 555 (2) (c) (570 SE2d 269) (2002). Unlike *Carr v. State*, 267 Ga. 701, 706 (3) (482 SE2d 314) (1997), relied upon by Demons, this case does not include evidence that the testifying witness knew about any conduct of the victim, nor did the victim make inconsistent statements to others. *Givens v. State*, 273 Ga. 818, 822 (2) (546 SE2d 509) (2001); *Azizi v. State*, 270 Ga. 709, 712 (2) (a) (512 SE2d 622) (1999). "[T]here is nothing to indicate that [the] statements were either recanted or contradicted by the victim during [his] lifetime." *Morris v. State*, 275 Ga. 601, 604 (3) (571 SE2d 358) (2002). "There is nothing to show that the victim had any reason to lie to [Ms. Bohr], who was subject to cross-examination. [Cit.]" *Givens v. State*, supra at 822 (2).

Recently, the Supreme Court of the United States overruled *Ohio v. Roberts*, 448 U. S. 56 (100 SC 2531, 65 LE2d 597) (1980) and held that, in order for out-of-court statements which are testimonial in nature to be admissible in a criminal trial, the Confrontation Clause requires that the declarant be unavailable and that the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, ___ U. S. ___ (124 SC 1354, 158 LE2d 177) (2004). However, the Supreme Court recognized that close constitutional scrutiny is inappropriate in cases which are far removed from the Clause's core concern with ex parte testimony. *Crawford v. Washington*, supra, 124 SC at 1369 (V). "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law . . . ." *Crawford v. Washington*, supra, 124 SC at 1374 (V) (C). Thus, state courts may consider "reliability factors beyond prior opportunity for cross-examination when the hearsay statement at issue was not testimonial. [Cit.]" *Crawford v. Washington*, supra, 124 SC at 1368 (IV). The Supreme Court declined "to spell out a comprehensive definition of 'testimonial[,]' " but held that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford v. Washington*, supra, 124 SC at 1374 (V) (C). In the instant case, the victim's hearsay statements were not remotely similar to such prior testimony or police interrogation, as they were made in a conversation with a

friend, before the commission of any crime, and without any reasonable expectation that they would be used at a later trial. See *Crawford v. Washington*, supra, 124 SC at 1364 (III) (A). Therefore, the hearsay statements were not "testimonial," and indicia of reliability other than the opportunity for cross-examination, such as those we applied above, are constitutionally permissible considerations in applying the necessity exception to Georgia's hearsay rule in this case.

Accordingly, the trial court did not err in admitting Ms. Bohr's hearsay testimony.

5. A friend of the victim's, Norman Simon, testified that, when he arrived at the airport for a conference two weeks before the murder, the victim picked him up and took him to his hotel to drop off his bags before going out to dinner. The room's telephone began ringing repeatedly, and the victim's car alarm went off. After the victim went out to check on the car, he returned to the room and said, "It's Eddie." Demons left a phone message, in a very angry tone, telling Simon to send the victim out now. Demons then began knocking on hotel room doors in the hall, saying, "I'm sorry, wrong room," each time a guest answered. Simon described the victim as extremely afraid, pacing back and forth, and saying "he's going to kill me." Hotel security and a police officer escorted Simon and the victim to the car, and they returned to the airport. Demons complains of the admission into evidence of the victim's hearsay statements during this incident.

"Included in our Code's res gestae exception to the rule against hearsay [cit.] is an exception for excited utterances. [Cit.]" *Walthour v. State*, 269 Ga. 396, 397 (2) (497 SE2d 799) (1998); OCGA § 24-3-3. Considered in context, Demons' threatening words and behavior made the incident a startling event that, in all probability, impeded the victim's normal thought processes, and his comments regarding Demons appear to have been spontaneous and not the result of reasoned deliberation. *Walthour v. State*, supra at 398 (2). See also *Smith v. State*, 231 Ga. App. 677, 680 (2) (a) (499 SE2d 663) (1998) (victim's telephone statement to ex-girlfriend, during the same month as the homicide, that defendant had just pushed him or knocked the phone out of his hand was admissible under res gestae exception). Testimony such as Simon's "that the declarant appeared nervous and upset, combined with a reasonable basis for emotional upset, will usually suffice for admission under the excited utterance exception." *Walthour v. State*, supra at 398 (2), fn. 7. Thus, the trial court's admission of the victim's hearsay statements was not clearly erroneous. *Walthour v. State*, supra at 397 (2).

Under *Crawford v. Washington*, supra, 124 SC at 1365 (III) (B), 1369 (V), firmly rooted hearsay exceptions, such as res gestae, are generally not a sufficient substitute for a prior opportunity for cross-

examination in order to admit testimonial hearsay in a criminal case. Like the statements discussed in Division 4, however, the victim's statements to Simon were not "testimonial." Thus, *Crawford* does not preclude their admission under Georgia's res gestae exception to the hearsay rule.

6. Demons also contends that the trial court erroneously denied his requests to charge on the definition of hearsay and its lack of probative, corroborative value. Although those requests contained correct propositions, they were neither complete expositions of the law nor adjusted to the evidence in the case. *Bassett v. State*, 119 Ga. App. 639 (2) (168 SE2d 343) (1969). More fundamentally, the principles set forth in Demons' requests do not concern the jury, but obviously relate to the trial judge's determination of whether hearsay statements are admissible for the jury's consideration as evidence, and the trial court would have erred had it simply left that determination to the jury. *Hyman v. State*, 272 Ga. 492, 495-496 (6) (531 SE2d 708) (2000).

*Judgments affirmed. All the Justices concur.*

DECIDED MARCH 29, 2004.

*Axam, Adams & Secret, Tony L. Axam*, for appellant.

*Robert E. Keller, District Attorney, Chad M. Doleac, Brian J. Amero, Sr., Assistant District Attorneys, Thurbert E. Baker, Attorney General, Andrette Watson, Assistant Attorney General*, for appellee.