## S06A1971. TURNER v. THE STATE.

(641 SE2d 527)

Melton, Justice.

Following a jury trial, Julia Lynn Turner was convicted of malice murder in connection with the poisoning death of her husband, Glenn Turner. Turner appeals from the denial of her motion for new trial.[1] We affirm.

Viewed in the light most favorable to the jury's verdict, the evidence reveals that Turner's husband, Glenn, a Cobb County police officer, died unexpectedly on March 3, 1995. For several months prior to Glenn's death, he had been having marital problems with Turner, and he confided to two of his close friends and colleagues that, if he ended up dead, Turner probably would have had something to do with it. As his marital problems with Turner continued, Glenn decided that he would move out of their home on the weekend of March 3, 1995. A few days before his planned move, however, Glenn became very ill and went to a hospital complaining of nausea and flu-like symptoms. Glenn was given fluids for dehydration, medicine for his nausea, and discharged. The next morning, Turner served Glenn green Jell-O, a food that would not show signs of being laced with antifreeze if it contained such a poison. Turner left Glenn at home after feeding him the Jell-O, and Glenn died within a few hours. Although Glenn's autopsy revealed signs of antifreeze poisoning, the Cobb County medical examiner concluded at that time that Glenn died of a heart attack. Soon after Glenn's funeral, Turner collected nearly a quarter of a million dollars from Glenn's estate and from insurance proceeds and death benefits as the primary beneficiary under Glenn's insurance policies.

---

[1] The crime occurred on or about March 3, 1995. Turner was indicted by a Cobb County grand jury on November 1, 2002, and charged with malice murder. On May 14, 2004, a Houston County jury found her guilty of the charged offense, and Turner was sentenced to life imprisonment. Turner filed a motion for new trial on May 18, 2004, which she amended on November 14, 2005. The motion was denied on January 11, 2006, and a timely notice of appeal was filed on January 13, 2006. The case was docketed in this Court on July 27, 2006, and orally argued on November 7, 2006.

Four days after Glenn's funeral, Turner moved in with Randy Thompson, a man with whom she had been having an affair prior to her husband's death. Thompson died six years later. Three days before Thompson's death, he spent the evening with Turner and had dinner with her. A few hours later, he became violently ill, and the next day he went to the emergency room with complaints of flu-like symptoms. Thompson was treated for his symptoms and discharged from the hospital. The following night, Turner fed him Jell-O, and Thompson was found dead the next morning. Turner, who had been incurring substantial debt prior to Thompson's death, collected over $30,000 as the beneficiary under Thompson's life insurance policy.

A Georgia Bureau of Investigation (GBI) toxicologist studied urine and blood samples from Thompson and discovered the presence of ethylene glycol, a poisonous substance found in antifreeze. When further tests confirmed the presence of antifreeze in Thompson's body, a GBI medical examiner determined the cause of Thompson's death to be ethylene glycol toxicity, a rare type of poisoning typically caused from the ingestion of antifreeze. After learning that Turner's husband had also died unexpectedly a few years earlier, the medical examiner ordered slides of the husband's kidneys, which revealed the same signs of antifreeze poisoning that were present in Glenn's first autopsy. Cobb County authorities then exhumed Glenn's body and additional tests were performed that confirmed the presence of ethylene glycol in Glenn's tissues. The Cobb County medical examiner revised Glenn's death certificate to show that the cause of death was ethylene glycol toxicity rather than heart-related disease. Thereafter, Turner was charged with murdering her husband.

1. Turner contends that the trial court erred in admitting into evidence the death of Randy Thompson as a similar transaction. Turner claims that, because there was no logical connection between the alleged murders of Thompson and her husband, the trial court could not admit evidence of the Thompson murder for the proper purposes of showing her motive, bent of mind, scheme, or course of conduct in relation to the current offense.

Similar transaction evidence is admissible where (1) it is introduced for a proper purpose, (2) sufficient evidence shows that the accused committed the independent offense, and (3) a sufficient connection or similarity exists between the independent offense and the crime charged so that proof of the former tends to prove the latter. *Williams v. State*, 261 Ga. 640 (2) (b) (409 SE2d 649) (1991). Here, the State sought to introduce the Thompson murder for a proper purpose, substantial evidence showed that this uncharged offense could be linked to Turner, and there was a logical connection between the Thompson murder and the murder of Turner's husband that would render this similar transaction admissible. See *Lyles v. State*, 215 Ga.

229 (2) (109 SE2d 785) (1959) (uncharged poisoning murders of other family members properly admitted in defendant's murder trial for poisoning daughter where evidence showed common scheme of poisoning family members to collect insurance money). Specifically, Turner was intimate with both Thompson and Glenn; both men went to the hospital complaining of flu-like symptoms soon before they died; both men died from the unique cause of antifreeze poisoning; Turner was the last person to see either man alive; both men died soon after Turner served them Jell-O; and Turner, who had financial problems before the deaths of both men, collected substantial money in connection with their deaths. The evidence of Thompson's death was sufficiently connected to the death of Turner's husband to show Turner's common scheme and method of "murder[ing] [these men] for no cause except to satisfy her selfish desire for money." Id. at 236 (5). The trial court did not clearly err in admitting into evidence Thompson's death as a similar transaction. Id. at 235 (2); *Smith v. State*, 273 Ga. 356 (2) (541 SE2d 362) (2001).

2. Turner argues that the trial court's pattern jury charge on similar transaction evidence was erroneous because the charge stated, in part, that "[i]f [you determine that the accused committed the independent offense], you must then determine whether the act was similar enough to the crime charged in the indictment such that proof of the other offense tends to prove the crime charged in the indictment, keeping in mind the limited purpose of such evidence." Turner claims that the charge was improper in that it allowed the jury to find Turner guilty of murdering her husband if it believed that she murdered Thompson. Viewing the charge as a whole, however, as we must (*Stansell v. State*, 270 Ga. 147 (4) (510 SE2d 292) (1998)), we conclude that the charge adequately and appropriately informed the jury of the limited purpose for which the similar transaction evidence could be considered. The charge repeatedly emphasized that the similar transaction evidence could only be considered for "the limited purpose of showing, if it does, the motive, plan and/or scheme, bent of mind, or modus operandi in the crime charged in the case now on trial." We find no error. *Spencer v. State*, 268 Ga. 85 (3) (485 SE2d 477) (1997).

3. Turner asserts that the trial court erroneously admitted hearsay in the form of (a) testimony from six witnesses regarding statements allegedly made by Glenn prior to his death, (b) testimonial statements made by Glenn to two police officers that were inadmissible under *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004), and (c) Randy Thompson's diary.

(a) Hearsay statements are admissible under the necessity exception to the hearsay rule when the evidence is both necessary and

accompanied by particularized guarantees of trustworthiness. *Chapel v. State*, 270 Ga. 151 (4) (510 SE2d 802) (1998).

> "Necessity" is demonstrated when the declarant is deceased, when the statement is shown to be relevant to a material fact, and when the statement is more probative of the material fact than other evidence that may be produced and offered. The requirement of "particularized guarantees of trustworthiness" is satisfied when the declaration is coupled with circumstances which attribute verity to the declaration. The determination of trustworthiness is inescapably subjective and the trial court's determination of the issue will not be disturbed absent an abuse of discretion.

(Citations and punctuation omitted.) *Watson v. State*, 278 Ga. 763, 765 (2) (a) (604 SE2d 804) (2004).

The evidence here meets both criteria of the necessity test. The declarant, Glenn Turner, is deceased, and all of the statements at issue dealt with Glenn's specific complaints about his marriage; Turner putting pressure on Glenn to include her as the primary beneficiary on his insurance policies; and Glenn's concerns that if something bad happened to him, Turner would probably be the one responsible. Only Glenn's statements on these issues would be probative, and the statements were relevant to both Turner's alleged motive for killing her husband and the question whether Glenn may have committed suicide by ingesting antifreeze on his own. The statements also carried particularized guarantees of trustworthiness in that they were made to Glenn Turner's close friends — friends in whom he confided both at work and as confidants outside of work — and all of the witnesses testified consistently regarding the types of statements made by Glenn prior to his death. See *Demons v. State*, 277 Ga. 724 (4) (595 SE2d 76) (2004). The trial court did not abuse its discretion in admitting these statements under the necessity exception. Id.

(b) *Crawford v. Washington*, supra, holds that before out-of-court testimonial statements may be admitted in a criminal trial, the Confrontation Clause requires that the declarant be unavailable and that the defendant have had a prior opportunity for cross-examination. Id. at 68 (V) (C). However, "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law," id., and state courts may consider "reliability factors beyond prior opportunity for cross-examination when the hearsay statement at issue was not testimonial." Id. at 57 (IV). While the United States Supreme Court declined to give a comprehensive definition of "testimonial," it

is clear that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. at 68 (V) (C). The term likely would not apply, however, to "[a]n off-hand, overheard remark" or "a casual remark to an acquaintance." Id. at 51 (III) (A).

Here, the objected to statements, although made to police officers, were not testimonial in nature. The record makes clear that Glenn Turner was speaking to his police-officer co-workers as his close friends when he made the statements indicating that he would not commit suicide and that his wife would probably have something to do with it if he died. The fact that Glenn worked as a police officer does not automatically convert any statement made to his colleagues into a testimonial statement, as the nature of Glenn's profession does not inherently change the nature of his statements. There was certainly no interrogation here, and Glenn's statements were "made in . . . conversation[s] with . . . friend[s], before the commission of any crime, and without any reasonable expectation that they would be used at a later trial." *Demons*, supra, 277 Ga. at 727-728 (4). Thus, they were simply nontestimonial statements that were made to friends and co-workers who happened to also be police officers. Because the statements were not testimonial in nature, and, as mentioned above, the statements fall within the necessity exception to the hearsay rule, the trial court did not err in admitting the statements. Id. at 728 (4).

(c) In connection with the similar transaction evidence discussed in Division 1, supra, the State made a proffer to show that Randy Thompson was in fact the author of a journal that the State introduced into evidence. Pretermitting the question whether this proffer was sufficient to render the journal admissible (see *Fetty v. State*, 268 Ga. 365 (6) (489 SE2d 813) (1997)), its admission was harmless, as its contents were merely cumulative of other evidence from witnesses who testified that Thompson was not suicidal and had plans for the future. See *Myers v. State*, 275 Ga. 709 (2) (572 SE2d 606) (2002). As stated in Divisions 1 and 2, supra, sufficient evidence connected Turner to the murder of Thompson such that his death was admissible as a similar transaction, and the jury was sufficiently instructed about the limited purpose for which this evidence could be considered. We find no harmful error.

4. Turner argues that the testimony of two expert medical examiners who opined that Glenn and Thompson died as a result of homicide, as well as death certificates admitted into evidence that referred to Glenn and Thompson's deaths as homicides, invaded the province of the jury. However, Turner failed to object to the testimony of a third expert who offered the same testimony regarding homicide as the cause of death for both Glenn and Thompson. Where the same

evidence that was admitted over objection at trial is later admitted "without objection, such admitted evidence renders harmless admission of the same evidence over objection." (Citation and punctuation omitted.) *Tavera v. State*, 279 Ga. 803, 805 (2) (621 SE2d 422) (2005).
*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 26, 2007.

*Garland, Samuel & Loeb, Donald F. Samuel, Berry & Reynolds, Jimmy D. Berry, D. Victor Reynolds*, for appellant.
*Patrick H. Head, District Attorney, Dana J. Norman, Assistant District Attorney, Thurbert E. Baker, Attorney General, Edwina M. Watkins, Assistant Attorney General*, for appellee.