## A07A0084. TAYLOR v. THE STATE.
(647 SE2d 381)

ANDREWS, Presiding Judge.

Kevin Alan Taylor was jointly tried with two co-defendants, Robert Nathaniel Hall, Jr. and Norval Patten, and found guilty by a jury of possession with intent to distribute marijuana and trafficking in cocaine. He appeals on various grounds from the judgment of conviction entered on the guilty verdicts, and for the following reasons, we affirm.

1. Taylor contends that the evidence was insufficient to support a guilty verdict on either of the charged offenses. Construed in favor of the guilty verdicts, evidence produced at the trial showed the following: After United Parcel Service (UPS) alerted police to the suspicious nature of a package shipped from "Helen White" in California to "Kate White" in Augusta, a police investigation at the UPS facility revealed an open package which contained suspected marijuana wrapped in red cellophane and surrounded by substances commonly used to mask the odor of marijuana. Posing as a UPS agent, a police officer called an Augusta phone number given to UPS and arranged with a person called "Dante White" for the package to be picked up at the UPS location. Prior to the pickup, the officer also went to the Augusta address listed on the package, 2814 Ridgecrest Drive, and observed two cars located at the address. On the day of the pickup, Taylor and Hall rented a car which they supplied to another co-indictee, Joseph Scurry, Jr., who used the car to pick up the UPS package. When Scurry arrived at UPS, he was followed by Taylor and Hall in a car previously seen by the officer at the 2814 Ridgecrest Drive address. Police arrested Scurry as he walked out of the UPS facility with the package, which evidence showed contained 40.1 pounds of marijuana with a street value of about $200,000. Officers stopped Taylor and Hall as they attempted to drive away immediately after Scurry was arrested. Observing two cell phones in the car occupied by Taylor and Hall, an officer used a police cell phone to call the phone number at which he had previously spoken to "Dante White," and both cell phones in the car rang simultaneously. The officer answered the cell phone adjacent to Hall and discovered that he was speaking to himself on the police cell phone.

Police then took Taylor and Hall to an apartment at the 2814 Ridgecrest Drive address to accompany officers during execution of a search warrant. As the officers approached the door to the apartment, Hall broke away from the officers and ran, and Taylor collapsed to the floor screaming, "Lord, please save me. Don't let them take me in here." Although the apartment was rented in Patten's name, officers gained entry through the locked apartment door with a key they found on Taylor's person. In their search of the apartment, officers

found 1,000 grams of suspected powdered cocaine (later tested and proved to be 73 percent pure cocaine) wrapped in the same red cellophane used to wrap the marijuana found at the UPS facility, along with $98,864 in cash. The apartment search also produced documents showing that Taylor, Hall, and Patten occupied the apartment. In addition to various men's clothing found in the apartment, police found a California birth certificate for Taylor's child, a check showing Taylor's payment of child support, and numerous other personal documents belonging to Hall and Patten. In a separate search of Taylor's car, police found a digital scale under the driver's seat like scales commonly used for weighing contraband, along with a piece of paper displaying the address from which the marijuana was shipped by UPS from California.

There was ample evidence to support the jury's finding that Taylor was guilty of possessing with intent to distribute the 40.1 pounds of marijuana in the package at the UPS facility. Taylor rented the car used by Scurry to pick up the marijuana; gave the rented car to Scurry immediately before he drove the car to the UPS facility to pick up the marijuana; followed Scurry to the UPS facility and watched the pickup; police found the address from which the marijuana was shipped written down in Taylor's car, and Taylor occupied the apartment where the marijuana was being shipped. Taylor's intent to distribute was proved by evidence that the amount of marijuana was far in excess of that possessed for personal use. The circumstantial evidence showed a connection between Taylor and the marijuana other than spatial proximity; it was sufficient to exclude every reasonable hypothesis save that of guilt, and was sufficient for the jury to find beyond a reasonable doubt that Taylor had joint constructive possession of the marijuana and was guilty as a party to the charged offense. OCGA § 16-13-30 (j); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Wilson v. State*, 256 Ga. App. 741-743 (569 SE2d 640) (2002); *Castillo v. State*, 166 Ga. App. 817, 822 (305 SE2d 629) (1983).

As to the trafficking in cocaine charge, the State sought to prove that Taylor, Hall, and Patten jointly occupied the apartment where the cocaine was found and that they had joint constructive possession of the cocaine. The State produced evidence sufficient for the jury to find joint occupancy by showing that the apartment was filled with men's clothing, that Taylor had a key to the apartment and had personal papers in the apartment, and that both Patten (who leased the apartment) and Hall had numerous personal papers in the apartment. In *Patten v. State*, 275 Ga. App. 574, 575-576 (621 SE2d 550) (2005), we affirmed Patten's conviction for trafficking in cocaine finding that the evidence was sufficient to prove that he had constructive possession of the cocaine and "was a participant in the

large-scale cocaine trafficking operation taking place from the apartment he leased." Id. at 576. The State also produced evidence sufficient for the jury to find that Taylor had joint constructive possession of the cocaine found in the apartment and was guilty of trafficking in cocaine. In addition to evidence that 1,000 grams of cocaine (with a purity of 73 percent) were found in the apartment occupied by Taylor, the State produced evidence connecting Taylor to the cocaine by more than mere spatial proximity. *Wilson*, 256 Ga. App. at 741-743. The State showed that scales similar to those commonly used to weigh contraband were found under the driver's seat of Taylor's car, and that, when Taylor was led toward the door of the apartment just prior to execution of the search warrant, he exhibited extremely fearful and nervous behavior. Under the circumstances, it was reasonable for the jury to infer that Taylor used the scales to weigh the cocaine, and that his behavior at the door to the apartment was caused by his guilty knowledge that there was cocaine in the apartment. See *Fernandez v. State*, 275 Ga. App. 151, 155 (619 SE2d 821) (2005). Furthermore, evidence showed that the 40.1 pounds of marijuana (wrapped in red cellophane) seized at the UPS facility was being shipped to the apartment occupied by Taylor where the cocaine (wrapped in the same red cellophane) was found. Evidence showing that Taylor was in joint possession of the marijuana being shipped to the apartment supported the State's charge that Taylor was also knowingly involved in the cocaine trafficking operation at the apartment. Again, the circumstantial evidence was sufficient to exclude every reasonable hypothesis save that of guilt and was sufficient for the jury to find that Taylor was guilty beyond a reasonable doubt of trafficking in cocaine. OCGA § 16-13-31 (a); *Jackson*, 443 U. S. 307; *Wilson*, 256 Ga. App. at 742-743.

2. Taylor claims the trial court erred by denying his motion to sever his trial from that of his co-defendants because their defenses were antagonistic, and because there was a danger that similar transaction evidence admitted against Hall was improperly considered by the jury against him. "[In a nondeath penalty case], the severance of defendants' trials is within the sound discretion of the trial court and its decision will not be disturbed unless there is an abuse of that discretion. OCGA § 17-8-4." *Dixon v. State*, 268 Ga. 81, 83 (485 SE2d 480) (1997). "[T]he burden is on the defendant requesting the severance to do more than raise the possibility that a separate trial would give him a better chance of acquittal. [Cit.] He must make a clear showing of prejudice and a consequent denial of due process. [Cits.]" *Cain v. State*, 235 Ga. 128, 129 (218 SE2d 856) (1975).

In support of his claim that defenses were antagonistic, Taylor makes the general assertion that he was "attacked by his co-indictees" during the trial, that he was prejudiced by association with

Hall after Hall fled during the trial and was tried "in absentia," and he points to testimony given by his trial counsel at the hearing on his motion for a new trial that, "We had threats. . . . Mr. Taylor was concerned there were people looking in the courtroom from California, which we communicated privately to both the district attorney and to the Court." Taylor does not elaborate on his counsel's reference to threats, nor does he cite to any evidence in the record on this claim. Hall did not testify or present any evidence, and Patten testified that he never engaged in any drug-related activity with Hall and first met Taylor at a pre-trial hearing in the case. Even if there were antagonistic defenses, the mere fact of such is not sufficient in itself to warrant severance absent a showing of prejudice, and Taylor has failed to carry his burden to show clear prejudice and denial of due process resulting from any antagonistic defenses. *White v. State*, 281 Ga. 276, 279 (637 SE2d 645) (2006). Even if Hall fled during the trial because the State presented stronger evidence against him, "the fact that the evidence as to one of two co-defendants is stronger does not demand a finding that the denial of a severance motion is an abuse of discretion, where there is evidence showing that the defendants acted in concert." (Citation and punctuation omitted.) *Strozier v. State*, 277 Ga. 78, 81 (586 SE2d 309) (2003).

There is no merit to Taylor's claim that similar transaction evidence admitted against Hall directly linked him to Hall's prior offense, and that this mandated severance. When the State introduced evidence that Hall had been previously convicted in California of shipping illegal drugs through the mail, evidence was also admitted showing that, during Hall's arrest in California on the prior charge, police found evidence in Hall's possession that Hall and Taylor (who lived in South Carolina at the time) were communicating by mail. There was no evidence that any of those communications involved shipping illegal drugs, and Taylor's cross-examination of the arresting officer made that point clear. The State argued that the prior communications were relevant to show the long-standing association between Hall and Taylor. But this was also consistent with Taylor's defense that his long-standing association with Hall had nothing to do with illegal drugs, but arose from the friendship he formed with Hall after he had a child with Hall's sister, who lived with the child in California. Because the trial court gave appropriate instructions to the jury that evidence of Hall's prior similar offense could be considered only in regard to Hall, and the evidence objected to by Taylor did not directly implicate him in the prior offense, no severance was mandated. *Banks v. State*, 230 Ga. App. 881, 882-883 (497 SE2d 821) (1998). There is no merit to Taylor's claim that the similar transaction evidence admitted against Hall amounted to the

introduction of similar transaction evidence against him and entitled him to notice and similar limiting instructions.

3. Taylor claims that it was reversible error which improperly singled out his testimony and impinged upon his presumption of innocence for the trial court to charge the jury that

> when the accused testifies, he at once becomes the same as any other witness and his credibility is to be tested by, and subjected to, the same tests as are legally applied to any other witness. In determining the degree of credibility that should be accorded his testimony, the jury may take into consideration the fact that he is interested in the result of his prosecution.

There was no error. This charge was specifically approved in *Larry v. State*, 266 Ga. 284, 286-287 (466 SE2d 850) (1996).

4. We find no merit to Taylor's contention that the trial court erred by denying his motion for a new trial made on the basis that his trial counsel was ineffective.

> To obtain reversal of a conviction based on a claim of ineffective assistance of trial counsel, a defendant has the burden of proving that counsel's performance was deficient, and that, but for the deficiency, there was a reasonable probability the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). In addressing the claim, a court must measure counsel's performance against an objective standard of reasonableness in light of all the circumstances and apply the strong presumption that all of counsel's significant decisions were made in the exercise of reasonable professional judgment. Id.; *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985). The trial court's finding that a defendant was afforded effective assistance of counsel must be upheld on appeal unless clearly erroneous. *Williams v. State*, 214 Ga. App. 106 (446 SE2d 789) (1994).

*Mayfield v. State*, 276 Ga. App. 544, 546 (623 SE2d 725) (2005).

Taylor claims that the trial court erred by replacing a juror during the evidence phase of the trial with an alternate juror without a legally sound basis, and that trial counsel's failure to object was ineffective assistance which entitled him to a new trial. The record shows that the trial judge was informed by the clerk's office that a juror's child had just been admitted on an emergency basis to a local hospital and that the juror needed to be at the hospital with her child.

The trial judge asked trial counsel for all the co-defendants if there was any objection to replacing the juror with an alternate so that she could go to her child at the hospital. Trial counsel for Hall and Patten stated they had no objection, and trial counsel for Taylor said nothing. Based on the information provided, the trial court concluded, "I think she needs to go, according to what I've got here," released the juror after informing her of the problem with her child, and replaced her with an alternate juror.

Under OCGA § 15-12-172, a trial judge has discretion to replace a juror who "dies, becomes ill, [or for some] other good cause shown to the court is found to be unable to perform his duty. . . ." (Citation and punctuation omitted.) *Hill v. State*, 263 Ga. 37, 41 (427 SE2d 770) (1993); *Darden v. State*, 212 Ga. App. 345, 347 (441 SE2d 816) (1994). There must be an informed and sound basis for the trial judge to exercise discretion to remove a juror under OCGA § 15-12-172. *Herring v. State*, 224 Ga. App. 809, 811 (481 SE2d 842) (1997).

> A trial judge may, in exercising her discretion, remove a juror and seat an alternate whenever she is convinced that the removed juror's ability to perform his duties is impaired. Excusing a juror because he is ill and replacing him with an alternate is proper, and a trial judge is under no obligation to consult with a doctor in order to confirm the need to excuse an ill juror.

(Foonotes omitted.) *Smith v. State*, 266 Ga. 827, 829 (470 SE2d 674) (1996). Similarly, we find that the trial judge exercised informed and sound discretion to remove the juror and seat an alternate after receiving reliable information that the juror's child was suffering from a medical condition that required an emergency admission to the hospital. The trial judge was not required to contact the hospital or consult with a doctor to confirm the emergency, and did not abuse his discretion by finding good cause that the juror would not be able under these circumstances to perform her duties. Id. It follows that trial counsel was not ineffective for failing to object to the juror's release. *Strickland*, 466 U. S. 668.

Taylor claims his trial counsel was ineffective because he failed to object to prevent the erroneous admission of evidence that he screamed, "Lord, please save me. Don't let them take me in here," when police officers took him in custody to the apartment at 2814 Ridgecrest Drive for execution of the search warrant. Shortly before he was taken to the apartment, Taylor invoked his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), to remain silent and to have counsel present during any custodial interrogation. Taylor contends that, when the officers led him to the

door of the apartment, this was the functional equivalent of custodial interrogation in violation of his *Miranda* rights because the officers knew this action was reasonably likely to elicit an incriminating response. *Rhode Island v. Innis,* 446 U. S. 291 (100 SC 1682, 64 LE2d 297) (1980). In *Rhode Island,* the Supreme Court held that custodial interrogation includes "express questioning or its functional equivalent" and that, although the police cannot be held accountable for the unforeseeable results of their words or actions, the "functional equivalent" of express questioning includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (Footnotes omitted.) Id. at 300-301. Taking Taylor back to the apartment while the search warrant was being executed did not amount to action that the police should have known was reasonably likely to elicit an incriminating response from Taylor. *Williams v. State,* 249 Ga. 839, 842 (295 SE2d 74) (1982). We conclude that Taylor was not being interrogated by words or actions when he spontaneously volunteered the statements, and that there was no violation of his *Miranda* rights. Because the trial court did not err by admitting the statements, Taylor's trial counsel was not ineffective for failing to object. *Strickland,* 466 U. S. 668.

Citing *Crawford v. Washington,* 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004), Taylor claims that the trial court erroneously admitted Scurry's post-arrest statement to police in violation of his Sixth Amendment right to confront and cross-examine an adverse witness because Scurry, a co-indictee but not a defendant in the joint trial, was absent and did not testify. Because there was no objection, Taylor contends his trial counsel was ineffective. *Crawford* established a new rule of criminal procedure holding that the Sixth Amendment Confrontation Clause prohibits use of testimonial hearsay unless the declarant was unavailable and the defendant had a prior opportunity to cross-examine the declarant. Id. at 68; *Whorton v. Bockting,* ___ U. S. ___ (127 SC 1173, 1181, 167 LE2d 1) (2007) (*Crawford* announced a new procedural rule); *Turner v. State,* 281 Ga. 647, 650-651 (641 SE2d 527) (2007) (*Crawford* rule does not apply to nontestimonial hearsay). Scurry's statement was given during police interrogation, so it was testimonial in nature and subject to the *Crawford* rule. *Turner,* 281 Ga. at 650-651. Because the decision in *Crawford* was rendered after Taylor's trial concluded but while Taylor's case was in the so-called "pipeline" — not yet final or still on direct review — *Crawford* applies retroactively in the present appeal. *Taylor v. State,* 262 Ga. 584, 586 (422 SE2d 430) (1992); *Gay v. State,* 279 Ga. 180, 182, n. 2 (611 SE2d 31) (2005). The State concedes that Scurry's statement was inadmissible testimonial hearsay under

*Crawford.* Accordingly, admission of the statement in violation of the Sixth Amendment Confrontation Clause would be reversible error, unless the State can prove beyond a reasonable doubt that the error did not contribute to the verdict. *Brawner v. State,* 278 Ga. 316, 319 (602 SE2d 612) (2004).

The erroneous denial of the opportunity to cross-examine and cast doubt on the testimony of an adverse witness is not necessarily prejudicial in every case. *Delaware v. Van Arsdall,* 475 U. S. 673, 682-684 (106 SC 1431, 89 LE2d 674) (1986).

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Id. at 684. Scurry's statement disclosed that a man he knew by the name of Dante White asked him to pick up a package at the UPS facility, and that he met White and White's friend to get a rental car, then drove the rental car to UPS to pick up the package. According to Scurry, he picked up the package, but had no idea what was in the package, and was arrested when he walked out of the UPS facility with the package. Scurry said the other person with White was a man he did not know and met for the first time when he got the rental car. According to Scurry's statement, on the day before he was arrested, he and White unsuccessfully attempted to pick up the package at UPS, and on that day White was alone and was driving a red Monte Carlo automobile.

Although Scurry's statement did not name any of the defendants, the State presented other evidence which showed that the man Scurry knew as Dante White was Hall. The State presented evidence linking Hall to the phone number police called from UPS to speak to Dante White about picking up the package, and police found the keys to the red Monte Carlo on Hall's person. Scurry's statement did not identify Taylor as the other man who accompanied White/Hall, but Taylor's own testimony at trial was consistent with Scurry's statement. Taylor testified that he agreed to his friend Hall's request to rent a car for Hall; that he met Hall to rent the car, then at Hall's

request he gave the rental car to a man he had never met before that he later learned was Scurry. Taylor further testified that he and Hall then followed Scurry to the UPS facility. According to Taylor, he rented the car for Hall, gave it to Scurry, and accompanied Hall to UPS because Hall was his trusted friend, and he had "no idea what was going on."

The substance of Scurry's statement was cumulative of Taylor's own testimony and contained nothing which contradicted Taylor's defense. It follows that the statement's importance as part of the State's case was minimal, and there was little if any potential that cross-examination of Scurry would have damaged the State's case. On these facts, we find that the error in admitting Scurry's hearsay statement was harmless beyond a reasonable doubt. *Chapman v. State*, 280 Ga. 560 (629 SE2d 220) (2006). Moreover, Taylor's trial counsel could not have been ineffective for failing to make an objection based on *Crawford* because the decision had not been rendered at the time of Taylor's trial. *Redwine v. State*, 280 Ga. 58, 62-63 (623 SE2d 485) (2005). In making litigation decisions, trial counsel has no general duty to anticipate changes in the law, and the reasonableness of trial counsel's conduct is examined from counsel's perspective at the time of trial. Id. Accordingly, the trial court correctly denied Taylor's motion for a new trial made on the basis of ineffective assistance of counsel. *Strickland*, 466 U. S. 668.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED JUNE 6, 2007 — ▮▮▮▮▮▮▮▮▮▮

*Brian Steel*, for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.