## S10A0248. ROSE v. THE STATE.

(695 SE2d 261)

HUNSTEIN, Chief Justice.

Demetrio Patricio Rose was convicted of felony murder, cruelty to children and related charges arising out of the stabbing death of his estranged wife, Ani Rose, in front of the couple's nine-year-old daughter. He appeals from the judgment of conviction and sentence[1]

---

[1] The crimes occurred on September 16, 2007. Rose was indicted January 23, 2008 in Clayton County on charges of murder, felony murder, two counts of aggravated assault, possession of a deadly weapon during the commission of a felony, and two counts of cruelty to

contending that the trial court erred by reseating a juror who had been the subject of a defense peremptory strike and by failing to give a requested charge on the lesser included offense of voluntary manslaughter. Finding no error, we affirm.

1. The evidence at trial authorized the jury to find that Rose and the victim were in the middle of a divorce. Rose came to the couple's home, argued with the victim over a trivial matter and, after the victim took the television remote control from him, followed her into the kitchen. There, Rose killed the victim using a kitchen knife with a ten-inch blade to inflict 26 stab wounds. The couple's nine-year-old daughter, who was in the adjacent room, saw her mother's legs moving, heard her screams and saw the blood on her. When a police officer arrived at the home in response to the victim's 911 telephone call, Rose answered the door and admitted that he had stabbed the victim.

The evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Rose was guilty of the charged crimes. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Rose used all of his peremptory strikes against Caucasian members of the venire. The State challenged those strikes pursuant to *Georgia v. McCollum*, 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992), which extended the principles established in *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986) to hold that a criminal defendant may not engage in "purposeful discrimination on the ground of race in the exercise of peremptory challenges." *McCollum*, supra at 59 (IV). The trial court then set forth on the record the racial composition of the venire, which included the information that, of the 25 jurors who were reached during voir dire, twelve or 48 percent were white.[2] Given that an opponent of a strike need only "produc[e] evidence sufficient to permit the trial judge to

children. The trial court granted a directed verdict on the cruelty charge as to Rose's older daughter. The jury acquitted him of malice murder and found him guilty of the remaining charges in a verdict filed December 19, 2008. The trial court's sentence, filed that same day, imposed life imprisonment for the felony murder conviction, into which was merged the aggravated assault convictions; a 20-year consecutive sentence for cruelty to children; and a five-year consecutive term for the possession charge. Rose's motion for an out-of-time appeal was granted February 6, 2009; a notice of appeal was filed that same day. The case was docketed for the January 2010 term in this Court and was submitted for decision on the briefs.

[2] Other than the State's *McCollum* challenge, the voir dire portion of the trial was not transcribed. Rose argues the State thus failed to complete the record with evidence to support the trial court's ruling. Aside from the fact that the burden is on the appellant to show error by the record, *Malcolm v. State*, 263 Ga. 369, 371 (3) (434 SE2d 479) (1993), the transcript reveals that no objection was made to the manner in which the trial court placed the venire composition and juror background information on the record. Moreover, no assertion has been made, either in the trial court or on appeal, that the information set forth by the trial court was incorrect. We thus find Rose's argument meritless. See generally *Moore v. State*, 279 Ga. 45 (2) (609 SE2d 340) (2005) (failure to object waives alleged error).

draw an inference that discrimination has occurred," *Johnson v. California*, 545 U. S. 162, 170 (125 SC 2410, 162 LE2d 129) (2005), the trial court did not err by concluding that a prima facie case of purposeful discrimination was established where Rose used 100 percent of his peremptory strikes against white venirepersons. See *Slade v. State*, 267 Ga. 868 (4) (485 SE2d 726) (1997).

> Once a prima facie case is made, the proponent of the strike is required to set forth a race-neutral, case-related, clear and reasonably specific explanation for the exercise of the peremptory strike. [Cits.] . . . It is then for the trial court to determine, after considering the totality of the circumstances, whether the opponent of the strike has shown that the proponent of the strike was motivated by discriminatory intent in the exercise of the peremptory challenge. [Cits.] . . . A trial court may . . . determine that improper discriminatory motive underlay the exercise of a peremptory challenge when the race-neutral explanation proffered by the strikes' proponent is so implausible or fantastic that it renders the explanation pretextual. [Cits.] The trial court's findings concerning whether the opponent of the strike has carried the burden of persuasion are entitled to great deference and will be affirmed unless clearly erroneous. [Cit.]

*Turner v. State*, 267 Ga. 149, 151 (2) (476 SE2d 252) (1996).

The trial court required Rose's defense counsel to set forth her reasons for striking Juror No. 3, the first of the Caucasian jurors. The record reflects that defense counsel stated, "Number three, Mr. Jones, Your Honor, primarily just the geographical location. He lives in Texas. I just felt there was — more comfortable with a *more* diverse geographical group." (Emphasis supplied.) Upon further questioning by the trial court, defense counsel again confirmed that Juror No. 3 was struck because he was from Texas, and counsel wanted *more* geographical diversity on the jury. When the State, in response to defense counsel's explanation, questioned how geographical diversity on the jury could be achieved by striking "someone who makes it diverse," defense counsel then changed her explanation, stating that she was "[n]ot necessarily [seeking] that type of diversity" and said that she wanted

> a different type of diversity. People who are a little bit more, who are more of an awareness of — more culturally diverse. Southwest part of the country. I wanted people who just had

just more of a background, more experience (inaudible). I just wanted something a little different.

Although a striking party's explanation for the exercise of a peremptory strike may be superstitious, silly, or implausible, the striking party's burden is satisfied as long as the articulated reason is race or gender-neutral. *Purkett v. Elem*, 514 U. S. 765, 768 (115 SC 1769, 131 LE2d 834) (1995). We assume, without deciding in this case, that geographical and cultural diversity are facially race-neutral reasons for a jury strike.[3] That does not resolve the issue, however, because "[i]n the situation in which a racially-neutral reason for the strike is given, the trial court must ultimately decide the *credibility* of such explanation." (Emphasis supplied.) *Stokes v. State*, 281 Ga. 825, 829 (3) (642 SE2d 82) (2007). Applying the requisite deference to the trial court's findings, see id., the trial court did not clearly err by rejecting as pretextual defense counsel's rationale of striking a juror from Texas because she wanted a geographically or culturally diverse jury. See *Purkett v. Elem*, supra, 514 U. S. at 769 (in considering whether strikes are pretextual, courts should focus on the genuineness of the explanation, rather than its reasonableness); see also *Miller-El v. Cockrell*, 537 U. S. 322, 339 (II) (B) (123 SC 1029, 154 LE2d 931) (2003) (trial judge is in best position to evaluate an attorney's candor and the presence or absence of discriminatory intent).

3. Rose contends the trial court erred by failing to give his requested charge on the lesser-included offense of voluntary manslaughter. See OCGA § 16-5-2 (a) (voluntary manslaughter occurs when a person "causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person"). A defendant is not entitled to a voluntary manslaughter charge where he has not demonstrated that he acted solely out of passion in response to a provocation that would have caused a reasonable person to act as he did. *Demons v. State*, 277 Ga. 724 (2) (595 SE2d 76) (2004). In light of the uncontroverted evidence that the victim did nothing more than argue with Rose over a trivial matter[4] and take the television remote control from him, there was

---

[3] However, as to explanations for juror strikes based on "cultural, geographic, or linguistic classifications," we agree with the Supreme Court of Louisiana that careful scrutiny is necessary "because of the ease with which such classifications may serve as a proxy for an impermissible classification." *Louisiana v. Hobley*, 752 S2d 771, 783 (La. 1999).

[4] According to Rose's daughters, the victim argued with him over his removal of a decoration from the wall.

not even slight evidence of the passion or provocation needed to authorize a charge on voluntary manslaughter. We find no error in the trial court's refusal to give Rose's requested charge. See id.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 1, 2010.

*Mack & Harris, Robert L. Mack, Jr.*, for appellant.

*Tracy Graham-Lawson, District Attorney, Billy J. Dixon, Assistant District Attorney, Thurbert E. Baker, Attorney General, Mary K. Ware, Assistant Attorney General*, for appellee.