## S01A1750. SAVAGE v. THE STATE.
### (558 SE2d 701)

HINES, Justice.

Rex Buford Savage appeals his convictions for malice murder, aggravated assault, and possession of a firearm in the commission of felonies in connection with the aggravated assault and fatal shooting of Jon Matthew Gross and the aggravated assault of Becky Miller. Savage challenges the convictions on the bases that the trial court did not charge the jury on voluntary manslaughter and involuntary manslaughter. Finding that the evidence did not authorize such instructions, we affirm.[1]

On the evening of September 22, 1999, Becky Miller called 911 to report that her boyfriend, Jon Gross, had been shot by Rex Savage. Miller and Savage had been in a sexual relationship prior to her

---

[1] The crimes occurred on September 22, 1999. During the January Term, 2000, a Hall County grand jury indicted Savage for the malice murder of Gross; the felony murder of Gross while in the commission of aggravated assault; the aggravated assault of Gross; the aggravated assault of Miller; and possession of a firearm in the commission of felonies. Savage was tried before a jury July 17-19, 2000, and found guilty of all charges. On July 20, 2000, he was sentenced to life imprisonment for malice murder; twenty years in prison for the aggravated assault of Gross to be served consecutively to the life sentence; ten years in prison for the aggravated assault of Miller to be served consecutively to the sentence for the aggravated assault of Gross; and five years in prison for possession of a firearm in the commission of felonies to be served consecutively to the sentence for the aggravated assault of Miller. The felony murder stood vacated by operation of law. A motion for new trial was filed on August 10, 2000, and the motion was denied on June 4, 2001. A notice of appeal was filed on June 25, 2001, and the appeal was docketed in this Court on August 20, 2001. The case was submitted for decision on October 15, 2001.

involvement with Gross. On the evening of the shooting, Miller, Gross, Savage, and Savage's common-law wife, Deborah, all went out to dinner; everyone was amicable. After they returned to the Savages' home, where Miller was staying, Savage asked Miller if she would have a baby for him and his wife, who was unable to bear children; days earlier the Savages had broached the subject to Miller following a sexual encounter between Miller and Savage. Miller declined and left the home; Gross followed her and the two of them began talking. Deborah went outside and asked the two to leave. Moments later Savage exited the house and aimed a shotgun at both Miller and Gross. Miller and Gross tried to run in opposite directions; Savage fired. Gross was hit in the lower back by the shotgun blast and screamed, "I can't believe he shot me!"

Miller and Deborah ran to Gross to try to help him. Miller then went inside to call 911. Savage followed her inside and heard her tell the 911 operator that Gross was still alive. Savage searched for more shotgun shells, found ones with larger pellets, reloaded his shotgun, and went outside. Savage then shot Gross again from less than three feet away; this second and fatal blast entered Gross's upper back, hitting the ribs and the lungs, and entering the heart. The 911 operator heard the second gunshot, and Miller told the operator, "He shot him again."

The police had trouble locating the Savage residence, which was down a secluded dirt road, so the 911 operator called back. Savage answered the telephone and related to the operator that he had "overdosed" on Xanax but did not need an ambulance, that only one person was hurt, that the shotgun was on the living room floor, and that he "shouldn't done it." When the operator asked Savage what he had done, he stated, "I picked up my shotgun. I got a shotgun that sits beside the bed all the time and it's loaded. And so I made up my mind. I just picked it up and walked outside and shot 'em."

1. The evidence was sufficient to enable a rational trier of fact to find Savage guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Savage contends that the trial court erred and abused its discretion in not charging the jury on voluntary manslaughter.[2] He

---

[2] A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

argues that inasmuch as he and Miller had recently engaged in a sexual relationship, discussed Miller having his child, and Miller rejected the proposal, a jury should have been given the opportunity to determine if the shooting was a crime of "passion" as contemplated by OCGA § 16-5-2. However, the argument is unavailing.

It is true, as Savage notes, that adulterous conduct may support a jury instruction on voluntary manslaughter. *Strickland v. State,* 257 Ga. 230, 231 (2) (357 SE2d 85) (1987). But this was not a situation of a defendant discovering a spouse's extra-marital affair, and acting as the result of any provocation from the discovery.

> Voluntary manslaughter occurs when an individual kills "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a). . . . [A] defendant is not entitled to a voluntary manslaughter charge where he has not demonstrated that he acted solely out of passion in response to a provocation that would have caused a reasonable person to act as he did.

*Alexis v. State,* 273 Ga. 423, 424 (2) (541 SE2d 636) (2001). Here, there was no evidence of provocative conduct by the decedent, or for that matter, by Miller. Nor was there any evidence of a heated exchange or any visible anger on anyone's part, including Savage. And Savage's methodical actions in pursuing his fatal attack on Gross, and Savage's own description of the shooting belie any claim that Savage acted out of passion. In the absence of evidence of provocation and passion, the trial court properly refused to instruct the jury on the offense of voluntary manslaughter. Id. at 425 (2).

3. Savage also contends that the trial court erred and abused its discretion in not charging the jury on involuntary manslaughter.[3] He claims that the charge was warranted because the evidence supported the misdemeanor offenses of pointing a gun at another, OCGA § 16-11-102;[4] reckless conduct, OCGA § 16-5-60;[5] and discharging a

---

OCGA § 16-5-2 (a).

[3] "A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony." OCGA § 16-5-3 (a).

[4] "A person is guilty of a misdemeanor when he intentionally and without legal justification points or aims a gun or pistol at another, whether the gun or pistol is loaded or unloaded." OCGA § 16-11-102.

[5] A person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor.

firearm while under the influence of alcohol or drugs, OCGA § 16-11-134.[6] But that is not so.

If the pointing of a firearm places the victim in reasonable apprehension of immediate violent injury, then the felony of aggravated assault, rather than the misdemeanor of OCGA § 16-11-102, has occurred. *Rhodes v. State,* 257 Ga. 368, 370 (5) (359 SE2d 670) (1987). Here, Gross and Miller's apprehension of immediate violent injury was apparent – they fled in fright. As to the misdemeanor crime of reckless conduct, the evidence was that Savage intentionally aimed his loaded shotgun at the victims; therefore, he did not point the weapon "consciously disregarding a substantial and unjustifiable risk that his act or omission [would] cause harm or endanger the [victims'] safety." OCGA § 16-5-60 (b); *Stobbart v. State,* 272 Ga. 608, 611 (3) (533 SE2d 379) (2000). Finally, the evidence did not show that Savage was under the influence of alcohol and/or any drug to the extent that it was unsafe for him to discharge a weapon. OCGA § 16-11-134.

Simply, there was no evidence that Savage committed an unlawful act not a felony. *Smith v. State,* 267 Ga. 502, 504 (4) (480 SE2d 838) (1997). Accordingly, it was not error for the trial court to decline to give a charge on the offense of involuntary manslaughter.

*Judgments affirmed. All the Justices concur.*

DECIDED JANUARY 14, 2002.

*Turner & Willis, Christopher W. Willis,* for appellant.
*Lydia J. Sartain, District Attorney, John A. Warr, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.

---

OCGA § 16-5-60 (b).

[6] "(a) It shall be unlawful for any person to discharge a firearm while:

(1) Under the influence of alcohol or any drug or any combination of alcohol and any drug to the extent that it is unsafe for the person to discharge such firearm except in the defense of life, health, and property[.]" OCGA § 16-11-134 (a) (1).