In the Supreme Court of Georgia

Decided: October 5, 2015

S15A0796. THOMAS v. THE STATE.

HUNSTEIN, Justice.

Appellant Dorville Thomas was convicted of malice murder in connection with the shooting death of Kalvin McGee and was sentenced to life imprisonment. Thomas now appeals his conviction and sentence on the grounds that the evidence was insufficient to support the verdict, that the trial court wrongly refused his requested jury instructions, and that his trial counsel was ineffective. Finding no error, we affirm.[1]

---

[1] Thomas was indicted in May 2009 by a Cobb County grand jury for malice and felony murder. A jury trial was held on March 9 and March 10, 2010. The jury was instructed on malice murder, felony murder, and voluntary manslaughter; the jury found Thomas not guilty of voluntary manslaughter and guilty of both malice murder and felony murder. The felony murder count was vacated by operation of law, see OCGA § 16-1-7, and Thomas was sentenced to life imprisonment for malice murder. Thomas filed a motion for new trial on March 11, 2010, and, after new counsel was appointed, filed an amended motion for new trial on September 6, 2013. In October 2013, the trial court held a hearing on the amended motion for new trial and, on November 13, 2013, denied the motion. Thomas filed his notice of appeal on November 27, 2013; the appeal was docketed to the April 2015 term of this Court and was thereafter submitted for decision on the briefs.

Viewed in the light most favorable to the jury's verdicts, the evidence adduced at trial established as follows. McGee was a self-described transsexual who advertised escort services under the name "Meeya" and met with clients at an apartment he shared with his roommate, Christian Alexander. Although McGee had long hair, breasts, and a "soft feminine voice," McGee's advertisements clearly indicated that he identified as transsexual. Around 11 p.m. on the night of the murder, Alexander was returning to the apartment and had a brief telephone conversation with McGee; McGee, who was at the apartment, indicated that a client was coming over. Alexander arrived a few minutes later, and, when he arrived, he observed that the apartment was set up as if McGee had a client there. Alexander also noticed that the front door was unlocked and that a door leading to McGee's side of the apartment was open, which Alexander found strange. After getting to his room, Alexander sent a text message to McGee but received no response. Shortly thereafter, Alexander entered McGee's room and discovered him dead on the floor next to the bed.

McGee's death was caused by two gunshots, one to the jaw and one to the chest, and McGee's bed showed evidence of two additional gunshots. The gunshot to McGee's jaw, which likely came first and was fired at close range,

2

could have occurred during a struggle; the chest wound, however, was fired from several feet away and likely did not occur during a struggle. Soot on McGee's hand indicated that his hand was near the gun when it was fired.

Although McGee communicated with his clients using a cell phone, investigators were unable to locate McGee's cell phone. Likewise, although McGee was known to be paid up-front in cash and to keep cash in various locations in his bedroom, investigators found no cash there. A review of McGee's cell phone records led to Thomas, and a search of Thomas's residence yielded what was later confirmed to be the murder weapon, a .32 caliber Smith and Wesson revolver. Thomas was interviewed by investigators, and, initially, he denied knowing McGee or being present at his apartment. Thomas eventually admitted that, after purchasing marijuana, he spoke with McGee by phone and went to McGee's apartment. According to Thomas, he was armed when he went to McGee's apartment because he carried a gun for protection when he purchased marijuana. Thomas told investigators that, as he was lying next to McGee on the bed, he observed that McGee was not fully female and got up to leave; as he was leaving, an agitated McGee reached for the gun in Thomas's back pocket, and Thomas pulled out the gun. According to Thomas,

3

he and McGee "tussled" for the gun, fell to the bed, and, while struggling on the bed for the gun, it "went off" three times. Thomas told investigators that he never paid McGee.

1. The evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Thomas was guilty of malice murder. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Thomas argues, however, that there is no evidence that he acted with express or implied malice. According to Thomas, there was no evidence that he was familiar with McGee before the murder or that he knew that McGee was a man before he arranged to meet him. Thomas also argues that his statement to investigators is the only direct evidence of what occurred that night.

"Express malice is that deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof[,]" and malice may be implied "where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart." OCGA § 16-5-1 (b). "It is for a jury to determine from all the facts and circumstances whether a killing is intentional and malicious." White v. State, 287 Ga. 713, 715 (1) (b) (699 SE2d 291) (2010). Here, the jury heard

4

evidence McGee clearly advertised himself as "transsexual" and that Thomas was armed when he went to McGee's apartment. Although the jury heard Thomas's statement claiming that there was a struggle for the gun, the jury also heard evidence that the gunshot to the chest came after McGee had already been shot and that gunshot to the chest likely did not occur during a struggle. As the jury was instructed, "there is no requirement that there be 'premeditation' or a 'preconceived' intention to kill; malice aforethought can be formed instantly." Wynn v. State, 272 Ga. 861, 861 (1) (535 SE2d 758) (2000). The evidence was sufficient to support the jury's verdict.

2. Thomas next argues that the trial court erred in denying his request to charge on accident. Trial counsel submitted a written request on the law of accident, and, although trial counsel argued in support of the instruction, trial counsel did not object when the trial court announced that it would not give the requested instruction. Thomas acknowledges that this issue is not preserved for appellate review, but he asks this Court to review this issue for plain error. See OCGA § 17-8-58 (b); Terry v. State, 291 Ga. 508, 509 (2) (731 SE2d 669) (2012) ("We review for plain error an alleged jury-instruction error if the error is properly enumerated and argued on appeal."). In State v. Kelly, 290 Ga. 29

(718 SE2d 232) (2011), this Court adopted the federal plain-error standard as set out in Puckett v. United States, 556 U. S. 129 (II) (a) (129 SCt 1423, 173 LEd2d 266) (2009), which involves the following four prongs:

> First, there must be an error or defect – some sort of "[d]eviation from a legal rule" – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the [trial] court proceedings." Fourth and finally, if the above three prongs are satisfied, the [appellate court] has the *discretion* to remedy the error – discretion which ought to be exercised only if the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"

(Emphasis in original.) Kelly, 290 Ga. at 33. "Reversal is authorized only if all four prongs are satisfied—a 'difficult' standard indeed." Carruth v. State, 290 Ga. 342, 348 (6) (721 SE2d 80) (2012).

"To authorize a requested jury instruction, there need only be slight evidence supporting the theory of the charge." Hicks v. State, 287 Ga. 260, 262 (2) (695 SE2d 195) (2010). "A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." OCGA

6

§ 16-2-2. Even if the evidence did support an instruction on accident, the trial court's refusal to give the instruction did not affect the outcome of the trial. "Th[e] accident defense applies where the evidence negates the defendant's criminal intent, whatever that intent element is for the crime at issue." State v. Ogilvie, 292 Ga. 6, 9 (2) (b) (734 SE2d 50) (2012). "Here, the jury was properly and fully instructed that the State had the burden of proving beyond a reasonable doubt that [Thomas] acted with the requisite malicious intent to commit each of the crimes charged," and "[t]he jury's conclusion that [Thomas] acted with malice thus necessarily means that it would have rejected any accident defense, which is premised on the claim that he acted without any criminal intent." Sears v. State, 290 Ga. 1, 3-4 (3) (717 SE2d 453) (2011). Accordingly, there is no plain error, and this enumeration is without merit.

3. Thomas also argues that the trial court wrongly refused to instruct the jury on involuntary manslaughter. Trial counsel requested the instruction based on the theory that Thomas had unintentionally killed McGee during the commission of an unlawful act other than a felony, namely, the misdemeanor offense of pointing a gun at another. See OCGA § 16-11-102. Here, again, Thomas acknowledges that this issue was not properly preserved, and he asks

this Court to review this issue for plain error.  See OCGA § 17-8-58 (b); Terry, 291 Ga. at 509.

"A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony."  OCGA § 16-5-3.  One commits the offense of pointing a gun at another when "he intentionally and without legal justification points or aims a gun or pistol at another, whether the gun or pistol is loaded or unloaded." OCGA § 16-11-102.  If, however, "the pointing of a firearm places the victim in reasonable apprehension of immediate violent injury, then the felony of aggravated assault, rather than the misdemeanor of OCGA § 16-11-102, has occurred."  Savage v. State, 274 Ga. 692, 694 (3) (558 SE2d 701) (2002).

Although Thomas argues that the evidence demonstrated that he had "absolutely no intention of killing [McGee]," Thomas does not argue on appeal that there was evidence that he committed the offense of pointing a gun at another; in fact, he twice asserts in his brief that "the evidence showed that [Thomas] never pointed the gun at [McGee]."  Accordingly, this argument fails on its face.  Nevertheless, to the extent that the revolver may have been pointed

8

at McGee, the evidence supports only that the firearm placed McGee in reasonable apprehension of immediate violent injury. The jury heard evidence that there was a struggle for the gun, that there were four shots fired, that McGee suffered a close-contact gunshot wound, and that McGee's hand was on or near the gun when it was fired. "[T]here was no evidence that [Thomas] committed an unlawful act not a felony," and, thus, "it was not error for the trial court to decline to give a charge on the offense of involuntary manslaughter." Savage, 274 Ga. at 694 (3). Accordingly, there is no plain error, and this enumeration is without merit. Kelly, 290 Ga. at 33.

4. Thomas next argues that the trial court wrongly refused to give two of his specific instructions related to voluntary manslaughter. Trial counsel asked the trial court to instruct the jury that "[w]herever a homicide is neither justifiable nor malicious, it is manslaughter." Trial counsel also asked the trial court to instruct the jury as follows: "Heated arguments, fear engendered by some danger or unresolved assaults without a 'cooling off' period can each be sufficient provocation to excite passion necessary for manslaughter. The sufficiency of the provocation is an issue solely for the jury to determine." The trial court refused to give the requested instructions, concluding that the

9

requested instructions were argumentative and covered by the pattern instructions. Thomas again concedes that the trial court's refusal to give these instructions was not properly preserved, and he asks this Court to review this issue for plain error. See OCGA § 17-8-58 (b); Terry, 291 Ga. at 509.

"The refusal to give a requested charge, even though it is a correct statement of law and pertinent and material to an issue in the case, is error only if it contains information that is not substantially covered by the charge actually given." Velazquez v. State, 282 Ga. 871, 877 (7) (655 SE2d 806) (2008). "Failure to give a requested jury charge in the precise language requested does not warrant reversal where the charge given substantially covers the applicable principles of law." Walker v. State, 282 Ga. 406, 408 (2) (651 SE2d 12) (2007). The trial court properly instructed the jury on murder and voluntary manslaughter, and trial court's instruction on voluntary manslaughter followed the suggested pattern jury instructions. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed. 2007, updated Jan. 2010) §§ 2.10.40, 2.10.41, 2.10.42. The substance of both requested instructions was covered by the trial court's charge, and, thus, it was not error to refuse to give the instructions. Velazquez, 282 Ga. at 877. See also Salyers v. State, 276 Ga. 568, 569-570 (3)

10

(580 SE2d 240) (2003) (recognizing that the pattern instructions adequately cover the law of "cooling time").[2]

5. Finally, Thomas contends that trial counsel was ineffective because she failed to preserve the trial court's refusal to give the above-referenced jury instructions and that, as a result, Thomas has a much greater burden on appeal under the plain-error standard. In order to prevail on this claim, Thomas must show both that counsel's performance was deficient and that the deficient performance was prejudicial. See Terry v. State, 284 Ga. 119, 120 (2) (663 SE2d 704) (2008). "If an appellant fails to meet his or her burden of proving either prong . . . the reviewing court does not have to examine the other prong." Rector v. State, 285 Ga. 714, 716 (6) (681 SE2d 157) (2009). As discussed above, the trial court's refusal to give Thomas's requested instructions either was not error or did not affect the outcome of Thomas's trial. Accordingly, Thomas would not have prevailed even if the issues were properly preserved, and, thus, any failure by trial counsel to properly preserve the claims for appeal

[2] In addition, we question whether the "justifiable nor malicious" instruction was a complete statement of the applicable legal principle. See Washington v. State, 249 Ga. 728, 730 (3) (292 SE2d 836) (1982) ("When a homicide is neither justifiable nor malicious, it is manslaughter, *and if intentional, it is voluntary manslaughter*." (Citations omitted; emphasis supplied)).

11

did not prejudice Thomas.  See <u>Loadholt v. State</u>, 286 Ga. 402 (2) (687 SE2d 824) (2010) (recognizing that trial counsel's failure to raise a meritless objection is, by definition, non-prejudicial).

<u>Judgment affirmed.  All the Justices concur.</u>