305 Ga. 597
FINAL COPY

S18A1273.  OVERTON v. THE STATE.

BENHAM, Justice.

Appellant Aaron Overton appeals his convictions related to the shooting death of Steve McQuire.[1]  Appellant alleges the trial court erred when it failed to give charges related to involuntary manslaughter.  Finding no reversible error, we affirm.

The evidence viewed in a light most favorable to upholding the jury's verdicts shows as follows.  Appellant, who was a 16-year-old boy at the time,

---

[1] The crimes occurred on December 6, 2007.  On March 14, 2008, a Fulton County grand jury indicted appellant on charges of malice murder, felony murder (aggravated assault with a deadly weapon), aggravated assault with a deadly weapon, and possession of a firearm during the commission of a crime.  After a jury trial took place March 9-15, 2010, the jury acquitted appellant of malice murder and returned verdicts of guilty on the remaining charges.  The trial court sentenced appellant to life in prison for felony murder and a five year suspended sentence on the charge of possession of a firearm during the commission of a crime.  On March 31, 2010, appellant moved for a new trial.  Upon going through a series of defense attorneys, appellant amended his motion for new trial three times — November 2, 2015, November 13, 2015, and on July 12, 2017.  On July 13, 2017, the trial court held a hearing on the motion for new trial as amended and denied it on July 17, 2017.  Appellant filed a notice of appeal on August 2, 2017, and the case was docketed in this Court on December 7, 2017, with the case number S18A0588.  On March 23, 2018, in response to a motion by the State, this Court remanded the matter to the trial court so that it could exercise its discretion as the thirteenth juror.  Upon remand, the trial court followed the directive of this Court and issued an order on April 12, 2018, again denying the motion for new trial.  Appellant filed the instant notice of appeal on April 12, 2018, and the case was docketed to the August 2018 term of this Court under the instant case number.  The appeal was orally argued on September 11, 2018.

was best friends with the victim, who was a man in his early twenties. Appellant loaned the victim a .380 handgun, which appellant had obtained from an unidentified third person. Appellant also possessed a .45 caliber firearm. Appellant attempted to regain possession of the .380 handgun from the victim, but had difficulty contacting and locating him, leading appellant to become increasingly angry with the victim. In the days leading up to the incident, appellant began making threats to the victim's friends and family members that appellant was going to hurt or kill the victim and/or hurt or kill certain members of the victim's family. On the day of the shooting, appellant finally tracked the victim down at the house of a mutual friend. Appellant and the victim "hung out" together and with their other friends at the house for several hours. Appellant and the victim discussed the .380 gun and then had an argument which appeared to subside. However, appellant again became angry about the victim's failure to return the gun, and the two young men ended up outside the friend's house in some kind of a standoff. Witnesses said they heard the victim say something to the effect of, "Oh, so you're going to shoot me?" and then heard gunfire. Appellant shot the victim in the leg, and the victim bled to death because the bullet injured his femoral artery.

Appellant testified at trial about the events leading up to the shooting. Appellant admittedly approached the victim with the intent to fight. Appellant stated that when the victim turned around, he had a gun in his hand, so appellant pulled out his .45 caliber gun. He admitted that he pointed his gun at the victim's leg. Appellant testified that he and the victim each reached for the other's gun and that his gun went off. After the shooting, appellant said he left the scene in the car in which he had arrived and did not know whether he had shot the victim.

The wounded victim ran a few houses down from the house where he was shot, leaving a trail of blood. He left his coat behind at the house where he was shot. One of the eyewitnesses recovered the coat and eventually gave it to the victim's family members. Although some witnesses testified they saw a gun wrapped in the coat or inside the pocket of the coat while the victim was at the house, no gun was found on the victim and, because his coat was removed from the scene, no law enforcement personnel examined its contents. The police recovered an unfired .380 caliber bullet near where the victim came to rest after being shot.

1. Appellant does not dispute that the evidence was legally sufficient to sustain his convictions. Nevertheless, we have independently reviewed the

record and conclude that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that appellant was guilty of the crimes for which he was convicted.  See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2.  The trial court charged the jury on accident, justification, mutual combat and voluntary manslaughter.  Appellant also requested charges on involuntary manslaughter[2] and the underlying misdemeanors of pointing a gun[3] and reckless conduct.[4]  The trial court declined to give any charges related to involuntary manslaughter, finding that any such charges were not

---

[2] OCGA § 16-5-3 provides in pertinent part:
> (a) A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony. A person who commits the offense of involuntary manslaughter in the commission of an unlawful act, upon conviction thereof, shall be punished by imprisonment for not less than one year nor more than ten years.
> . . .

[3] OCGA § 16-11-102 provides:
> A person is guilty of a misdemeanor when he intentionally and without legal justification points or aims a gun or pistol at another, whether the gun or pistol is loaded or unloaded.

. . .

[4] OCGA § 16-5-60  provides in pertinent part:
> . . .
> (b) A person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor.

. . .

adjusted to the evidence. On appeal, appellant alleges the trial court erred and argues such charges were warranted because of certain witness testimony suggesting the bullet appellant fired ricocheted from the ground into the victim's leg. Specifically, one of the witnesses, who was at the house when the shooting occurred, testified he "believed" appellant shot into the ground. Appellant also points to testimony from the medical examiner who testified that the bullet's trajectory through appellant's right thigh was at an upward angle. We disagree that this testimony supports charges related to involuntary manslaughter.

According to appellant's testimony at trial, he intentionally pointed his gun at the victim's leg prior to the gun "going off" during a subsequent struggle with the victim. Witnesses stated that just before hearing gunfire, they heard the victim say something to the effect of, "Oh, you're going to shoot me now?" The record shows that the victim was in reasonable apprehension of immediately receiving a violent injury. See OCGA § 16-5-20 (a) (2).[5] "If the pointing of a firearm places the victim in reasonable apprehension of immediate violent injury, then the felony of aggravated

---

[5] OCGA § 16-5-20 (a) (2), which defines simple assault, states in pertinent part: "A person commits the offense of simple assault when he or she . . . [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury."

assault, rather than the misdemeanor of [pointing a gun], has occurred." Savage v. State, 274 Ga. 692, 695 (3) (558 SE2d 701) (2002). Therefore, the record supported the crime of aggravated assault inasmuch as appellant intentionally pointed his gun at the victim, eliminating any entitlement to charges of involuntary manslaughter and pointing a gun. See id.; Roberts v. State, 282 Ga. 548, 554 (12) (651 SE2d 689) (2007). Appellant was also not entitled to charges of involuntary manslaughter and reckless conduct since he approached the victim with an intent to fight and intentionally pointed his gun at him. Savage v. State, 274 Ga. at 695 (3) (a defendant who intentionally pointed a gun at the victim was not merely acting in conscious disregard of "a substantial and unjustifiable risk" that his actions would harm or endanger the victim). The trial court did not err when it refused to give these charges.

Judgment affirmed. All the Justices concur, except Blackwell, J., who concurs in judgment only in Division 2.

Decided March 4, 2019 — Reconsideration denied March 27, 2019.

Murder. Fulton Superior Court. Before Judge Brasher.

Christina R. Cribbs, Veronica M. O'Grady, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, David K. Getachew-Smith, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.