**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

January 22, 2026

# In the Court of Appeals of Georgia

A25A2175. CHRISTIE v. THE STATE.

BROWN, Chief Judge.

After a jury trial, Dalton Christie was convicted of aggravated assault, aggravated battery, and possession of a firearm during the commission of a felony. Christie filed a motion for new trial, which the trial court denied. Christie appeals from the trial court's order, asserting a violation of the continuing witness rule and challenging the jury instructions. He also argues that this Court should consider the cumulative effect of the trial court's errors. We affirm.

"On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdict." (Citation and punctuation omitted.) *Anderson v. State*, 348 Ga.

App. 322 (822 SE2d 684) (2018). So viewed, on April 20, 2019, Christie shot the victim in a Pep Boys parking lot adjacent to a strip club. Both the victim and Christie worked as parking valets in the lot, which required them to take payment from those who parked in the lot, direct them as to where to park, and watch the cars until the strip club closed. Christie worked the earlier shift, and the victim arrived between 9:00 and 9:30 p.m. and worked until 2:00 a.m. when the club closed. The victim testified that on several occasions before that night, he would have to call his boss when he showed up for work because Christie would not leave and would still be trying to collect cash from the patrons.

On the night in question, Christie again refused to leave. The victim called his boss to report that Christie would not leave, and the tension between the two of them escalated as they stood near each other to compete to take payment from the cars coming in. While arguing, Christie commented, "You put your hands on me, that'll be the last thing you do," but the victim thought the threat was an idle one. The victim testified that Christie pushed him, and he pushed him back. Christie then reached into his pocket, pulled a gun, and shot the victim in his lower leg, breaking both bones in his leg. The victim testified that he carried a backpack to work that

contained his reflective vest but did not carry a weapon. Photographs of the victim's injuries on the day he was shot and others reflecting his course of treatment were introduced into evidence, and the victim identified Christie at trial.

An officer responded to three 911 calls that someone had been shot — one from the victim, another from a supervisor in charge of the parking lot, and the third from Christie. The audio recording of the 911 calls were played for the jury. Upon arriving at the scene, the officer observed that the victim was screaming and in obviously excruciating pain because his leg was shattered. The victim, who vacillated between screaming, throwing up, and passing out, told the officer that he had an altercation with a coworker, who shot him with a black gun, then left the scene. The officer did not observe a firearm around the victim's body, nor did he have any contact with Christie.

In his 911 call, Christie informed the police that he had shot the victim and was en route to the police department. Officers met Christie, took him into custody, and transported him to the police department. Detective Loc Tran interviewed Christie two times. Approximately 30 to 40 minutes passed between the shooting and the initial interview. After reading aloud and initialing each right set out on a Miranda

form, Christie agreed to speak with the detective. The interviews, which were recorded, were published to the jury.

During the first interview, Christie stated that he was supposed to leave the parking lot at 10:00 p.m., but the victim always showed up too early. On the day in question, the victim started cursing at Christie and threatening him and went into his bag, as he said, "Motherfucker, just keep talking. You keep talking. I'm gonna fuck you up." Christie stated that he did not know whether the victim had a gun. He told the victim he did not want to fight, but the victim pushed him and then punched him in the stomach. Christie then pulled his own gun from the pocket of his coat and shot the victim in the leg to stop him. Christie recalled that during the argument, the victim was on the phone with his boss, who Christie stated was his business partner. EMS was called to the police station to assess Christie. The paramedic saw no visible injuries but recommended that Christie be taken to the hospital since he was complaining of injury to his stomach.

Christie contacted Detective Tran to arrange the second interview. By that time, Christie had been charged with aggravated assault with a weapon and aggravated battery. During the second interview, Christie asked if the police found a bag on the

4

scene and stated that the victim had a gun and that everyone who worked there carried guns.

The detective testified that a week before trial, he was informed that in October 2021, Christie submitted a statement about the incident. The statement, which Christie entitled, "Affidavit of Truth," was read into evidence by the detective and provided, in pertinent part:

> The time [the victim] showed up was 09:27pm of April twentieth. . . . I said to him, . . . you are very early tonight you are approximately more than thirty two minutes early. He said to me when I shows up you must to leave the property when I . . . is the supervisor for [the victim]. I . . . said to him . . . go and check all those car to see if they are okay. . . . [The victim] did not follow orders but decided to use his personal phone to make a call talking to someone without making the routine check. . . . [The victim] alleged that I . . . was working on his time which is 10:00 pm[, and] cutting into his . . . dope money and He has to get back extra money tonight so I . . . should leave now before he cause harm. . . . [The victim] did pull a revolver firearm out of his book bag and pointed it at me . . . and then he put it back in his book bag. I was still standing at the entry of the parking lot he is walking around and I kept my eyes on him because he was acting in a strange manner that night . . . saying stop watching me and following me. I suspect something was up here. I am still at the entry of the parking lot. He start talking very disrespectful to me . . . saying . . . I am going to knock those grey hairs off your face. I said

to him whatever you do, please do not put your hands on me. . . . He start walking in a huge circles. I was keeping my eyes on him. I was at the entry of the parking. I went over to car whilst still having my eyes on him and take my firearm from my car and went back to the entrance the parking lot he then approach me and said I am gonna f*** you up. . . , He then assaulted me by pushing me hard, I stagger backwards almost fell on my back and he still came at me after that pushing me and I managed to step toward him and he gave me one hard punch to my chest he grab me and a major struggle ensued between us in the parking lot. I came to found out that he was in my jacket and trying to disarm me, by take my firearm from my body. We were struggling fiercely he tries again to disarm me my firearm and in the struggle it went off. I thought that I got shot my adrenaline was so high at the time of the incident but I found out he . . . was the one who was hit in the lower leg.

The only other witness to testify at trial was an expert who reviewed the records of the charge nurse at the hospital where Christie was assessed after his first interview with Detective Tran. The expert testified that Christie reported that he had been hit with a fist in his upper stomach, that a treating nurse noted that he was in no acute distress, that Christie reported that his pain level was a seven out of ten, that one would expect to see some discoloration from a blow causing that level of pain, and that there was no discoloration in the area. The diagnosis given was "abdominal wall contusion," meaning there was some tenderness in the area from being punched that

was not yet discolored. Photographs of Christie's chest and abdominal area were introduced into evidence.

A jury convicted Christie of aggravated assault, aggravated battery, and possession of a firearm during the commission of a felony. Christie filed a motion for new trial, raising ten errors, which the trial court denied. On appeal, he asserts only four errors: (1) a violation of the continuing witness rule; (2) the refusal to instruct the jury that his right of self-defense permitted him to defend himself; (3) the failure to instruct the jury on the law of accident; and (4) the cumulative effect of the errors demand reversal. We find no reversible error.

1. In his first enumeration of error, Christie argues that the trial court violated the continuing witness rule when it allowed his "Affidavit of Truth" to go out with the jury during deliberations after it was read during trial. We agree that the trial court violated the continuing witness rule but find no reversible error.

> [T]he continuing witness rule is directed at written testimony that is heard by the jury when read from the witness stand. The rule is based on the principle that it is unfair and places undue emphasis on written testimony that has been read to the jury for the writing to be sent out with the jury to be read again during deliberations whereas oral testimony is received by the jury only once.

(Citation and punctuation omitted.) *Muse v. State*, 316 Ga. 639, 659 (6) (889 SE2d 885) (2023). Indeed, "[t]he types of documents that have been held subject to the rule include affidavits, depositions, written confessions, statements, and dying declarations," *Rainwater v. State*, 300 Ga. 800, 803 (2) (797 SE2d 889) (2017) (citation omitted), as well as signed statements of guilt. See *Sivonda v. State*, 353 Ga. App. 762, 767 (839 SE2d 251) (2020). "Our courts have consistently held that it is error to allow a jury to take written or recorded statements into the jury room during deliberations unless those statements *are consistent* with the defendant's theory of the case." (Citation and punctuation omitted; emphasis supplied.) Id. at 766.

Christie's theory of the case was self-defense, and the theory of his affidavit was that the shooting was accidental. Thus, the affidavit was inconsistent with his theory of defense and therefore should not have been allowed to go out with the jury during its deliberation. "However, harm as well as error must be shown to warrant a reversal." (Citation and punctuation omitted.) Id. at 767. When a non-constitutional evidentiary error occurs, reversal is required

> only if it harms a defendant's substantial rights, and we determine
> whether such harm occurred by asking whether it is highly probable that
> the error did not contribute to the verdict. As part of that determination,

> we review all the evidence de novo, after setting aside the evidence admitted in error, and we weigh the remaining evidence as we would expect reasonable jurors to have done so.

(Citations and punctuation omitted.) *Ealey v. State*, 322 Ga. 509, 519-520 (2) (c) (920 SE2d 581) (2025). Here, not only did the victim testify as to what happened, Christie admitted in two separate statements that he intentionally shot the victim. Additionally, Christie's affidavit was read to the jury without objection, so that version of events was brought out during the trial. See generally *Kent v. State*, 245 Ga. App. 531, 533 (3) (538 SE2d 185) (2000) (where evidence contained in the statement was also brought out during the trial and evidence of guilt was overwhelming, there was no harm); *Gough v. State*, 236 Ga. App. 568, 569-570 (2) (512 SE2d 682) (1999) (continuing witness error was harmless in part because the statement was also brought out during trial). Christie argues that the affidavit undermined his claim of self-defense, but again he cannot show that the error contributed to the verdict. Accordingly, Christie has not established reversible error. See *Owens v. State*, 248 Ga. 629, 631-632 (284 SE2d 408) (1981) (due to strength of evidence against defendant, harmless error to allow defendant's taped statement that he meant to shoot the victim to go out with jury where defendant testified at trial that the shooting was accidental).

2. Next, Christie argues that the trial court erred when it refused his proposed instruction on self-defense, specifically, that his right of self-defense permitted him to use self-defense to prevent the commission of a forcible felony, and that we should apply a "harmless error" standard of review to this enumerated error. Christie is incorrect on both points. The charge as given aptly covered the theory of self-defense, and regarding the standard of review, we review this alleged error for plain error because Christie failed to object to the charge given at trial.[1] See *Mayo v. State*, 319 Ga. 34, 39 (2) (b) (i) (901 SE2d 522) (2024).

To show plain error, Christie must establish the following:

First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome

---

[1] Pursuant to OCGA § 17-8-58 (a) "[a]ny party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate." And the failure to make such an objection "shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties." OCGA § 17-8-58 (b).

of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. Reversal is authorized only if all four prongs are satisfied—a difficult standard indeed.

(Citations and punctuation omitted.) *Thomas v. State*, 297 Ga. 750, 752-753 (2) (778 SE2d 168) (2015). Christie cannot establish plain error because the elements of self-defense were included in the jury charge. "In reviewing a challenge to the . . . jury instruction, we view the charge as a whole to determine whether the jury was fully and fairly instructed on the law of the case. A jury instruction must be adjusted to the evidence and embody a correct, applicable, and complete statement of law." (Citations and punctuation omitted.) *Lopez v. State*, 310 Ga. 529, 537 (7) (852 SE2d 547) (2020), overruled on other grounds, *Johnson v. State*, 315 Ga. 876, 884 (2) (b) (885 SE2d 725) (2023).

In the instant case, the trial court charged the jury as follows:

Affirmative Defense: The defendant has raised a defense that even if he committed the act described in the indictment, there are circumstances that justify it. Once this defense is raised, the State must disprove it beyond a reasonable doubt. Justification, generally: The fact that a

11

person's conduct is justified is a defense to prosecution for any crime based on that conduct. The defense of justification can be claimed when the person's conduct is justified under the Official Code of Georgia, Section 16-3-21.

Justification and the use of force in defense of self and others: Sometimes a defendant's threat or use of force is legally justified, and so it is not a crime. A defendant is justified in using force that is intended or likely to cause death or serious bodily injury wherein he reasonably believes that the use of such force is necessary to prevent death or serious bodily injury to himself. The State has the burden of proving beyond a reasonable doubt that the defendant's actions were not justified. If you decide the defendant's actions were justified, then it would be your duty to find the defendant not guilty.

The charge, as given, aptly covered the concept of self-defense, as the jury was instructed that a defendant may use deadly force if he reasonably believes it is necessary to prevent death or serious bodily injury to himself. See *Carver v. State*, 262 Ga. 723, 724 (2) (425 SE2d 657) (1993) (unnecessary to give exact language of a request to charge where applicable principles of justification and self-defense are covered by the charge as given); *Allen v. State*, 259 Ga. 303, 304 (3) (379 SE2d 513) (1989) (trial court did not error where "[t]he charge on self-defense, viewed in the context of the charge as a whole, contained nearly the precise language of the statute

[and] covered the same principles of law as the [defendant's] requested charge") (citation and punctuation omitted). Thus, Christie has not met the burden of establishing plain error to warrant reversal of his convictions.

3. Next, Christie argues that the trial court committed plain error when it did not instruct the jury on the law of accident. As referenced above, to establish plain error, Christie must, among other things, show the error likely affected the outcome of the trial, which he has not done. See *Thomas*, 297 Ga. at 752-753 (2),

> "To authorize a requested jury instruction, there need only be slight evidence supporting the theory of the charge, but the failure to give a requested charge which is authorized by the evidence can be harmless error." (Citation and punctuation omitted.) *Rana v. State*, 320 Ga. 66, 71 (2) (b) (907 SE2d 674) (2024). Christie maintains that his affidavit offered slight evidence that authorized a charge on accident. Even if we agreed,

> the trial court's refusal to give the instruction did not affect the outcome of the trial. The accident defense applies where the evidence negates the defendant's criminal intent, whatever that intent element is for the crime at issue. Here, the jury was properly and fully instructed that the State had the burden of proving beyond a reasonable doubt that [Christie] acted with the requisite malicious intent to commit each of the crimes

13

charged, and the jury's conclusion that [Christie] acted with malice thus necessarily means that it would have rejected any accident defense, which is premised on the claim that he acted without any criminal intent.

(Citations and punctuation omitted.) *Thomas*, 297 Ga. at 753 (2).[2] Accordingly, this enumerated error also fails.

4. In his final enumeration of error, Christie argues that this Court should conclude that the cumulative effect of the errors made by the trial court warrant reversal of the verdict. In order to evaluate Christie's claim, we

consider collectively the prejudicial effect, if any, of trial court errors, and determine whether the cumulative prejudicial impact of these [errors] requires a new trial. To establish cumulative error, [Christie] must show that (1) at least two errors were committed during the trial and (2) considered together with the entire record, the multiple errors

---

[2] The jury was charged, in relevant part:

For aggravated battery, the state must prove that the defendant maliciously caused bodily harm to another person by depriving that person of a part of his body. Malice, defined: Malice is not ill will or hatred. For the purpose of this code section, malice means an actual intent to cause the particular harm produced; that is, bodily harm without justification or excuse.

14

so infected the jury's deliberation that they denied [him] a fundamentally fair trial.

(Citations and punctuation omitted.) *Hall v. State*, 322 Ga. 378, 389 (3) (920 SE2d 58) (2025). Christie argues that if this Court concludes that the trial court violated the continuing witness rule and that the trial court erred in not including "forcible felony" in its jury charge or committed plain error when it did not instruct the jury on accident, then we should consider the cumulative effect of the errors. Given our conclusions above and assuming without deciding that the evidentiary error and the instructional error could be aggregated for cumulative-error review,[3] we conclude Christie has failed to establish that as a result thereof, he was denied a fundamentally fair trial. See *Jackson v. State*, 317 Ga. 95, 107 (4) (891 SE2d 866) (2023).

*Judgment affirmed. Barnes, P. J., and Watkins, J., concur.*

---

[3] Because we reviewed two of the errors for only plain error, "we need not decide how that could affect our evaluation of the cumulative harm because these claims fail even under the stricter harmless-error standard for preserved non-constitutional errors." *Campbell v. State*, 320 Ga. 333, 366 (12), n. 35 (907 SE2d 871) (2024), citing *State v. Lane*, 308 Ga. 10, 21 (4) (838 SE2d 808) (2020) (declining to "decide exactly how multiple standards may interact under cumulative review of different types of errors").